UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARFIELD BEACH CVS LLC,<br><br>                                    Plaintiff,<br>v.<br><br>MOLLISON PHARMACY, SAMERA YOKOUB, an individual, and DOES 1 through 50,<br><br>                                   Defendants. | Case No.: 17-cv-00879-AJB-MDD<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br>**(Doc. No. 3-1)** |

Pending before the Court is Plaintiff Garfield Beach CVS LLC's ("Plaintiff") ex parte application for a temporary restraining order ("TRO"). (Doc. No. 3-1.) Defendants Mollison Pharmacy and Samera Yokoub opposed this application on May 10, 2017. (Doc. No. 15.) Pursuant to Judge Battaglia's Civil Case Procedures, no hearing was scheduled for this ex parte request. Having considered both parties' arguments, and for the reasons set forth below, the Court **DENIES** Plaintiff's request for an ex parte TRO.

## **BACKGROUND**

Plaintiff brings the following action for (1) violation of the Defend Trade Secrets Act ("DTSA"); (2) violation of the California Uniform Trade Secrets Act; (3) Breach of Contract; (4) Unfair Competition; (5) Conversion; and (6) Tortious Interference with Business Relationship/Contact. (Doc. No. 1 at 2.) Plaintiff is a subsidiary of CVS Health,

1

the largest pharmacy health care provider in the United States. (*Id*. ¶ 2.) Defendant Mollison Pharmacy ("Mollison") is a pharmacy business with its principal place of business in El Cajon, California. (*Id*. ¶ 5.) Defendant Samera Yokoub ("Yokoub") is a California resident who was an employee of Express in El Cajon, which was bound to an agreement with Plaintiff to maintain its confidences. (*Id*. ¶ 6.)

The events leading up to Plaintiff instituting this action are as follows. On April 11, 2017, Plaintiff closed a transaction and purchased the confidential inventory, trade secret prescription files, and goodwill of Double Star Pharmacy, Inc., doing business as El Cajon Express Pharmacy ("Express"). (*Id*. ¶ 3.) Due to the confidential and proprietary nature of the assets that were purchased from Express, Yokoub, and other key Express employees executed Key Employee Agreements ("KEA") on or about March 28, 2017. (*Id*. ¶ 14.) The KEA detailed that the key Express employees would not (1) remove from Plaintiff's premises any confidential or proprietary business information; (2) not use for his/her own benefit, divulge, or disclose to anyone any of the information; and (3) that any breach of the KEA would result in irreparable harm to Plaintiff. (*Id*.)

The prescription files that Plaintiff purchased included hard copy prescriptions, signature logs, customer lists, as well as similar electronic data that Express maintained in confidence. (*Id*. ¶ 16.) One of the subsets of the prescription files was known as a delivery log and it included customers' names, the prescription numbers, customers' signatures confirming receipt of the delivery, and co-pay information for each prescription. (*Id*. ¶ 20.) All of the prescription files are not readily available public information. (*Id*. ¶ 18.)

Plaintiff contends that Yokoub was an Express driver that was entrusted with confidential and proprietary information including the delivery log. (*Id*. ¶ 21.) After Plaintiff purchased Express, Yokoub told Plaintiff that she had to quit as she had to care for her sick husband. (*Id*. ¶ 25.) Instead, Plaintiff alleges that Yokoub began working for Mollison, Plaintiff's competitor. (*Id*.) On that same day, Plaintiff demanded that Yokoub return the delivery logs from March through April; however, Plaintiff maintains that Yokoub failed to do so. (*Id*. ¶ 26.) Since Yokoub's separation with Plaintiff, Plaintiff has

2

17-cv-00879-AJB-MDD

taken additional steps to secure and protect the delivery logs.[1] (*Id.* ¶ 29.)

Further, Plaintiff contends that at the same time Yokoub began working for Mollison, Mollison began making an unprecedented number of prescription transfers from Plaintiff. (*Id.* ¶ 32.) Thus, Plaintiff alleges that Mollison and Yokoub (collectively referred to as "Defendants") used Plaintiff's confidential and trade secret prescription file to contact Plaintiff's customers. (*Id.* ¶¶ 36–37.) Moreover, Plaintiff maintains that Defendants have made several misrepresentations regarding the state of their business in the hopes of directing patients to Mollison pharmacy. (*Id.* ¶ 35.) In sum, Plaintiff argues that Yokoub shared Plaintiff's confidential and proprietary trade secret information with Mollison so that they could actively work together in injuring Plaintiff's business and that they continue to retain the delivery logs. (*Id.* ¶ 37–39.)

Plaintiff instituted this action on May 1, 2017. (Doc. No. 1.) The next day, Plaintiff filed its ex parte motion for a temporary restraining order ("TRO"), preservation of evidence, and order for expedited discovery. (Doc. No. 3.) On May 25, 2017, Magistrate Judge Dembin granted Plaintiff's motion for a preservation order and denied Plaintiff's motion for expedited discovery. (Doc. No. 21.)

## **LEGAL STANDARD**

A temporary restraining order may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order, as a form of preliminary injunctive relief, is to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439

---

[1] In a sworn declaration, Yokoub states that she never worked for Plaintiff, returned the El Cajon Express Pharmacy March/April delivery log on April 13, 2017, did not make a copy or otherwise retain any information contained within the delivery log, and did not have access to prescription files or customer information while employed with El Cajon Express Pharmacy. (Doc. No. 15-9 ¶¶ 7–11.)

(1974). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). However, a TRO is an "extraordinary remedy" and is "never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). Instead, the moving party bears the burden of demonstrating four factors: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id.* at 20 (citations omitted).

Although a plaintiff must satisfy all four of the requirements set forth in *Winter*, the Ninth Circuit employs a sliding scale whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, if the moving party can demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a TRO may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Id.*

## DISCUSSION

Before reaching the merits of Plaintiff's TRO, the Court first turns to the evidentiary objections attached to Defendants' opposition to Plaintiff's ex parte application. (Doc. No. 15-1.) Defendants object to (1) the entire declaration of Joseph Shorez as unreliable as it is not dated and the signature is on a separate page; (2) paragraph 11 and 12 of Lauren Silva's declaration as lacking foundation and hearsay; and (3) the entire declaration by Stephen Vaudry as irrelevant, lacking foundation, and speculative. (*Id.*) After a thorough review of the law and the attached declarations, the Court **SUSTAINS** both Defendants' objection to Shorez's declaration as it is undated and their objection to paragraph 11 and 12 of Ms. Silva's declaration as hearsay. The Court **OVERRULES** Defendants' objection to Mr. Vaudry's declaration finding it relevant to the instant matter.

Next, the Court turns to the merits of Plaintiff's ex parte application for a TRO. Plaintiff contends that it will be irreparably harmed absent a TRO as Defendants will continue to exploit and misappropriate its trade secrets. (Doc. No. 3-1 at 12.) Further, Plaintiff argues that it is likely to succeed on the merits of its trade secrets, breach of contract, and conversion claims. (*Id*. at 14–18.)

Based on the foregoing, Plaintiff has not established that a TRO is an appropriate measure at this time. The underlying foundation of Plaintiff's request is that its business is suffering as Defendants have misappropriated their proprietary documents and as a result Defendants have initiated several unauthorized prescription transfers and have solicited Plaintiff's patients under false pretenses. (Doc. No. 3-1 at 4–10.) However, these allegations are all based on paragraphs 11 and 12 of Ms. Silva's declaration, which the Court has determined is hearsay, if not double hearsay. Accordingly, without something more, like third party, or first-hand evidence corroborating Ms. Silva's statements, the Court is not convinced (due to a lack of credible evidence) that Defendants are actively targeting or soliciting Plaintiff's customers or that Plaintiff has lost business. Thus, based on the foregoing, Plaintiff has not demonstrated the requisite likelihood of irreparable harm absent injunctive relief, and its ex parte application fails for that reason.[2] *See Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) ("Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO.").

---

[2] The Court notes that Defendants contend that the Court must dismiss this action as it lacks subject matter jurisdiction. (Doc. No. 15 at 9.) Plaintiff's Complaint is in this Court based exclusively on their claim for violation of the DTSA, 18 U.S.C. § 1836. (*Id*.) However, Defendants assert that the DTSA does not apply as the alleged trade secret is not intended for use in "interstate or foreign commerce." *Id* (quoting 18 U.S.C. § 1836(b)(1).) Based on the nature of an ex parte application, Defendants were not able to fully brief this issue, (Doc. No. 15 at 9–12), and Plaintiff was not able to respond. Accordingly, the Court will not delve into this issue at this point in time. If Defendants wish to allege that this Court does not have jurisdiction, they should file a separate motion before the Court.

# CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's ex parte application for a temporary restraining order.

**IT IS SO ORDERED**.

Dated: June 9, 2017

Hon. Anthony J. Battaglia
United States District Judge